JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America
ex rel. Edward Wisner

(b) County of Residence of First Listed Plaintiff: **Berks County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Youman & Caputo, LLC, 3803 West Chester Pike, Suite 150, Newtown Square, PA 19073, (215) 302-1999

## DEFENDANTS
Grosfillex, Inc.

County of Residence of First Listed Defendant: **Berks County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☒ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |  | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
|  |  | | ☐ 864 SSID Title XVI |  |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General |  |  | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property |  | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
|  | ☐ 448 Education / ☐ 550 Civil Rights | | | |
|  | ☐ 555 Prison Condition | | | |
|  | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 USC 3729(a)

Brief description of cause:
Violation of AD/CVD duty obligations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
N/A
JUDGE _____
DOCKET NUMBER _____

DATE: 1/29/20

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEALED | FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |
| Plaintiffs, | |
| | CIVIL ACTION NO. |
| vs. | |
| | COMPLAINT |
| SEALED | |
| | JURY TRIAL DEMANDED |
| Defendants. | |
| | **DO NOT PLACE IN PRESS BOX** |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* EDWARD WISNER,<br><br>Plaintiffs,<br><br>vs.<br><br>GROSFILLEX, INC.,<br><br>Defendant. | FILED UNDER SEAL PURSUANT TO<br>31 U.S.C. § 3730(b)(2)<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>**DO NOT PLACE IN PRESS BOX** |

On behalf of the United States of America pursuant to the United States False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), Plaintiff-Relator Edward Wisner ("Relator") files this *qui tam* Complaint for treble damages and civil money penalties against defendant Grosfillex, Inc. ("Grosfillex") arising out of its continuing scheme to evade anti-dumping duties on aluminum extrusion merchandise imported from China. Grosfillex is committing two basic types of fraud: (1) failing to self-report admitted violations of antidumping and countervailing duty orders covering past imports; and (2) fraudulently importing merchandise from China in ways to evade paying duties on on-going imports. In support of these claims, Relator alleges as follows:

## I. THE PARTIES

### A. Plaintiff-Relator

1. Plaintiff-Relator Edward Wisner is an individual citizen of the Commonwealth of Pennsylvania.

2. Relator has been employed by Grosfillex since 1984 and, for 17 years, he was the Logistics Manager for the North American divisions, with a broad range of duties related to the

shipping of Grosfillex's products, including both imports and domestic distribution to retailers and customers.

3. Since December 4, 2019, Relator has held the position of Logistics Coordinator and reports to the Supply Chain Manager.

### B. Defendant

4. Defendant Grosfillex, Inc. ("Grosfillex") is a Delaware corporation with a principal place of business at 230 Old West Penn Ave., Robesonia, PA 19551.

5. Defendant is the domestic subsidiary of a privately owned global manufacturer of outdoor products such as patio furniture and decorative garden planters.

6. The parent company is French with headquarters in Oyonnax, France.

7. Defendant operates the two North American divisions of the global business – Grosfillex USA Consumer Products and Grosfillex USA Contract Furnishings – from facilities in both Robesonia and Lebanon, PA.

## II. JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.

9. Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. § 1391(b).

10. This Court has personal jurisdiction over the defendant under 31 U.S.C. § 3732(a) because defendant transacts business and submitted false or fraudulent claims directly or indirectly to the federal government in this judicial district.

11.  Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States, and he has voluntarily provided the information to the United States before filing this action based on the information.

12.  This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media. To the extent that there has been any public disclosure unknown to Relator, he is an original source under 31 U.S.C. § 3730(e)(4).

### III. ANTI-DUMPING AND COUNTERVAILING DUTY LAWS

#### A. General Background

13.  Federal trade remedy laws seek to protect U.S. industries and workers by mitigating the impact of unfair competition from foreign companies resulting from unfair pricing or government subsidies.

14.  The laws are enforced largely through the administrative investigations and actions of two U.S. government agencies: the International Trade Administration of the Department of Commerce ("ITA") and the International Trade Commission ("ITC").

15.  Two primary U.S. trade remedy laws are:

- **Antidumping ("AD") laws (19 U.S.C. § 1673 *et seq.*),** which authorize the imposition of duties if (1) the ITA determines that foreign merchandise is being, or likely to be, sold in the United States at less than fair value, and (2) ITC determines that a U.S. industry is materially injured or threatened with material injury, or that the establishment of an industry is materially retarded, due to imports of that merchandise; and

- **Countervailing duty laws (19 U.S.C. §1671 *et seq.*),** which authorize the imposition of countervailing duties ("CVD") if the ITA finds that the government of a country or any public entity has provided a subsidy on the manufacture, production, or export of the merchandise, and the ITC determines injury or threat thereof.

16. Investigations are initiated by petitions filed with both the ITA and the ITC. If the ITA makes a final determination that imports are dumped and/or subsidized, and the ITC makes a final determination that a U.S. industry is materially injured or threatened with material injury, ITA will issue an AD/CVD order setting, among other remedies, rates of duty collection.

17. Once an AD/CVD order is in place, ITA conducts reviews of merchandise imported into the United States to determine if imports are being sold at less than fair value (*i.e.*, dumped) or are benefiting from unfair subsidization. If ITA continues to find that imports are being dumped or unfairly subsidized, it directs the U.S. Customs and Border Protection (an agency of the U.S. Department of Homeland Security) ("CBP") to assess AD/CVD in the amount calculated by ITA.

18. CBP is responsible for enforcing the AD/CVD laws on imported goods. CBP collects AD/CVD cash deposits, administers AD/CVD entries, assesses and collects final AD/CVD, and enforces AD/CVD on imports that evade AD/CVD orders.

### B. AD/CVD Orders on Aluminum Extrusions from China

19. The ITA Orders at issue in this case are *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order,* 76 FR 30650 (May 26, 2011) and *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order,* 76 FR 30653 (May 26, 2011).

20. The AD and CVD Orders have an identical scope. The "merchandise covered ... is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from" certain specific aluminum alloys. The Orders impose AD/CVD duties on incomplete products or parts of unfinished products (if extruded) while excluding both (a) finished products containing aluminum extrusions as parts or (b) finished goods containing aluminum extrusions that are imported unassembled in a "finished goods kit."

4

21. The relevant language of these aspects of the Orders is:

> Subject aluminum extrusions may be described at the time of importation as **parts for final finished products that are assembled after importation, included but not limited to ... furniture**. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods "kit" defined further below.
>
> ...
>
> **The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry**, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a **'finished goods kit.'** A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product.

76 R 30650-51 (AD Order) (emphasis added); *see also* 76 FR 30654 (CVD Order).

## IV. THE UNITED STATES FALSE CLAIMS ACT

22. The United States False Claims Act prohibits, *inter alia*, the following:

> knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval;
>
> knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim; and
>
> knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government.

U.S.C. § 3729(a)(1)(A), (B) (G) (West 2010).

## V. DEFENDANT'S VIOLATIONS OF THE FCA

### A. Grosfillex's Discovery of AD/CVD Obligations on Imported Aluminum Products from China

23. By email dated August 29, 2019, Lourdes Silva, a Customs Entry Writer at Grosfillex's customs broker C.H. Robinson, advised Grosfillex NA Logistics Coordinator Joe Esteves that CBP had flagged a container of products from a Chinese supplier.

24. The product was Sunset AC WH Wire Frame Sling-T28 (HTS code 9403.20.0050).

25. Copying Relator, Silva asked Esteves to advise whether the product was subject to AD or CVD.

26. After ignoring several emails from both Silva and her C.H. Robinson colleague Melissa Feliciano, Esteves eventually responded by asking whether C.H. Robinson could handle the issue, then suggested that it was the Chinese supplier's responsibility to answer this question.

27. Feliciano and Silva advised Esteves that the importer (*i.e.*, Grosfillex) is responsible for determining whether AD/CVD duties apply. Silva recommended that Esteves "review the scope for these cases A-570-967 & C-570-968" to help Grosfillex answer these questions.

28. By this time, in this same email chain, Silva had advised Esteves (copying Relator and a contact at the Chinese supplier) that CBP had flagged a second container.

29. Relator is not aware of anyone at Grosfillex having knowledge about the aluminum extrusion Orders until CBP flagged these containers.

30. Relator began working on the issue with Esteves and others at Grosfillex, including Director of Operations Gene Hracho, to whom Relator directly reported until his recent position change.

6

31.     Relator reviewed the information that Silva referenced and sought clarification from C.H. Robinson about the potential duty amounts.

32.     Relator also corresponded with C.H. Robinson's Compliance Manager, Shelly Mallory, about an ITA decision that she had forwarded about an apparently similar product.

33.     Mallory advised Relator that "[t]he only way to know for sure" is to submit a request to the ITA for a similar ruling.

34.     Going this route would require the company to pay the duties and then, if ITA ruled that the duties did not apply, obtaining a refund.

### B.     Grosfillex Develops Action Plan for All Products Potentially Within Scope of AD/CVD Orders

35.     Ultimately, CBP flagged four containers. The container identifiers and merchandise shipped were as follows:

> OOLU-9838898 - Sunset slings and Sunset table bases
> CSLU-1696730 - Quattro Bases
> CCLU7634251 - EcoFix and X1 bases
> DFSU7538692 - Aluminum Table Rails

36.     Some of these containers also contained aluminum sling frames.

37.     On September 20, 2019, Hracho sent an email to Relator and others at the company working on this issue outlining "the status of each imported aluminum product as it stands in our attempts to avoid the Anti-Dumping Duties" and inviting comment "if you see any of the dispositions differently." The attachment to the email was an Excel spreadsheet listing 27 products potentially covered by the Orders and proposing action plans for each product.

38.     Hracho and the team working on this issue have continued to revise the action plan since then.

7

### C. Fraudulent Evasion of AD/CVD Duties Resulting From Action Plan

#### 1. Failure to Self-Report AD/CVD Duties Owed on Past Imports

39. The spreadsheet divides the products into six color-coded "Proposed Action" categories. The first four categories list 14 products that the company has determined are not disclaimable, *i.e.*, that the Orders cover the item and, therefore, AD/CVD duties should be paid.

40. An earlier version of the spreadsheet specifically states either "No Solution" or "Not Disclaimable" for the products in the first three categories (*i.e.*, the categories in some shade of red).

41. These products include three of the products in the flagged containers: HPL Tabletop Rails, X-One Pedestal Bases and Quattro Pedestal Bases.

42. After the container was flagged by CBP, Grosfillex shipped it to France to avoid paying AD/CVD duties and risking an investigation into prior shipments of this product. The company's plan for future imports of the X-One and Quattro bases is to ship locking hinges directly to the Chinese manufacturer so the products can be assembled in China and then imported as finished goods kits.

43. The "Proposed Actions" for of the products listed on the spreadsheet range from proper (*e.g.*, starting to use steel instead of aluminum) to improper, as discussed in more detail below. In no case, however, does Grosfillex intend to self-report that, for years, it has been importing extruded aluminum products from China and failing to pay AD/CVD duties as required by the Orders.

44. Even assuming that Grosfillex was completely unaware of the AD/CVD Orders on these products until August 2019, the company is now plainly aware that it should have been paying AD/CVD duties and has an obligation to self-report this violation as to these products.

To the best of Relator's knowledge, information and belief, Grosfillex has no intention of doing so.

### 2. Fraudulent Plan to Evade AD/CVD Duties Going Forward by Importing Certain Merchandise Disguised as "Finished Goods Kits"

45.  One of the products listed in the second (maroon) category of the spreadsheet is Louisiana Table Legs.

46.  Historically, the Louisiana Table Legs were imported from China and paired in the United States with a tabletop. Going forward, Grosfillex intends to import the legs with a cheap top that it will discard and then use the same top that it has always used.

47.  Two of the products listed in the fourth (yellow) category are the Plaza/Moon/Vogue barstool legs and the Java Chair/Barstool Backs. The plan for each product is to pair with the other as a "complete kit."

48.  Grosfillex's plan is to import an equal number of barstool bases and backs and call them a kit. Grosfillex has no intention, however, of selling these parts together in the vast majority of cases.

49.  In the United States, the barstool bases will be assembled with a different Grosfillex made plastic back and the Java backs generally will be paired with a different base.

50.  As part of this scheme, Grosfillex created fictitious reference numbers for the fake kits.

51.  In one email discussing this plan (copied to Relator, Hracho and others), Grosfillex's New Product Development & Engineering Manager writes: "What we know is that it should be simple and discrete to the customs eyes, but not lying." The email continues: "We are also trying to avoid to show anything that could indicate we are buying separate components. The less info is visible, the best [sic] it is. We are buying kits: not seats and backs."

52. The Orders define "finished goods kit" as "a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product."

53. Grosfillex's plan for all three of the above products clearly do not satisfy the Orders' definition of finished goods kit.

### D. Merchandise That Grosfillex Has Deemed Disclaimable

54. The merchandise that was in the first container flagged by CBP was the Sunset chair sling. Grosfillex is treating that product as disclaimable based, in part, on the ITA Decision provided by C.H. Robinson.

55. Grosfillex imports this aluminum extrusion product from China and, in the United States, assembles it with a resin frame manufactured in the United States.

56. Relator has informally obtained opinions from three independent customs brokers that, under their interpretation of the Orders, the Sunset Chair sling frame is not disclaimable.

57. To the best of Relator's knowledge, information and belief, Grosfillex has no intention of paying AD/CVD duties on these products.

58. All of Defendant's conduct described herein has resulted in, and will continue for the foreseeable future to result in, numerous false statements to the United States, including false declarations to CBP such as Customs Form 7501 (a/k/a "Entry Summary").

59. The United States has been damaged, and will continue to be damaged going forward for the foreseeable future by all of Defendant's conduct intended to avoid paying AD/CVD duties, including without limitation Defendant's failure to self-report violations of the Orders on past imports and by Defendant's fraudulent conduct in disguising future imports as kits.

## COUNT I

### VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(G)

60. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

61. In violation of 31 U.S.C. § 3729(a)(1)(G) (2009), Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government.

62. Said false and fraudulent claims were presented with defendant's actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

63. By means of these false records and/or statements, Defendant decreased the amount of customs duties that it paid on imports of aluminum extrusions in an amount to be determined at trial.

WHEREFORE, Relator, on behalf of the United States, demands judgment for statutory penalties and treble damages as provided in the False Claims Act and for such other relief as the Court deems just and proper.

Respectfully submitted,

YOUMAN & CAPUTO, LLC

Dated: January 29, 2020          BY: _____
DAVID J. CAPUTO, ESQUIRE
ZACHARY ARBITMAN, ESQUIRE
3803 West Chester Pike, Suite 150
Newtown Square, PA 19073
(215) 302-1999
dcaputo@youmancaputo.com

*Attorneys for the Plaintiff-Relator*

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| United States of America ex rel. Edward Wisner | : | CIVIL ACTION |
| v. | : | |
| Grosfillex, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

| 1/29/20 | David J. Caputo, Esquire | _[signature]_ |
|---|---|---|
| Date | Attorney-at-law | Attorney for Plaintiff-Relator |
| 215-302-1999 | 610-808-1772 | dcaputo@youmancaputo.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02